SOUTHFIELD POLICE OFFICERS ASSOCIATION
*v.* CITY OF SOUTHFIELD

1. MUNICIPAL CORPORATIONS—EMPLOYEES—POLICE AND FIREMEN—PARITY OF COMPENSATION—HOURS OF WORK.

A city charter amendment establishing parity of compensation between policemen and firemen, although working hours are different, does not establish a ratio of working hours between the two services; consequently a reduction in working hours for firemen required by statute does not necessitate a proportional reduction of working hours for policemen.

2. MUNICIPAL CORPORATIONS — CHARTERS — AMENDMENTS — PRESUMPTION OF VOTERS' KNOWLEDGE OF LAW.

The voters of a city adopting a charter amendment between the effective date of a State statute and its operative date are presumed to know of the statute so that the amendment was adopted within the framework of the statute (CL 1948, § 123.841).

3. STATUTES—EFFECTIVE DATE—OPERATIVE DATE—NOTICE TO VOTERS.

A State statute, given immediate effect, although not made operative until later, is notice to voters of its effective date.

Appeal from Oakland, Clark J. Adams, J. Submitted Division 2 March 5, 1969, at Detroit. (Docket No. 5,044.) Decided March 25, 1969. Leave to appeal denied November 18, 1969. See 382 Mich 795.

Complaint by Southfield Police Officers Association, a Michigan corporation, and Ronald Roediger,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur, Municipal Corporations § 255 *et seq.*
[2, 3] 50 Am Jur, Statutes § 496 *et seq.*

for himself and as president of the corporation, against the city of Southfield, a municipal corporation, and Donald V. Smith, Patrick G. Flannery, and C. Hugh Dohany, officers of the city, for parity of compensation between policemen and firemen of the city of Southfield. Southfield Fire Fighters Association, Local No. 1029, International Association of Fire Fighters, a voluntary unincorporated association, and John Beardsley, for himself and as president of the association, intervened as defendants. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Noel Gage,* for plaintiffs.

*Sigmund Baras,* for defendant city of Southfield.

*Rothe, Marston, Mazey, Sachs & O'Connell,* for intervening defendants.

BEFORE: LESINSKI, C. J., and FITZGERALD and V. J. BRENNAN, JJ.

FITZGERALD, J.   CL 1948, § 123.841 as amended (MCLA § 123.841; Stat Ann 1969 Cum Supp § 5.3331), provides that no firefighter shall be required by his employing municipality to work more than 24 hours straight or to be off duty less than 24 consecutive hours out of any 48-hour period. The firefighters were also entitled to an additional 24 consecutive hours off duty every 12 days beginning July 1, 1966, so that on that date no firefighters must work more than an average of 63 hours a week. A similar provision provided that on July 1, 1967, no firefighter must work more than an average of 56 hours a week.

On April 25, 1966, the people of the city of South-field approved § 6.20[1] as an amendment to the city charter to take effect July 1, 1966, providing for a parity of compensation for firefighters (who were receiving 5% less) with the policemen of the community. In accordance with the State statute, *supra,* the city, on July 1, 1967, reduced the hours of the firefighters from 63 to 56. The subject of this suit is a corresponding demand by the policemen that their hours be proportionately reduced by 7 hours from 40 to 33. The city refused, and the police department sought an injunction to prevent the city from making them work more than 33 hours a week. The court granted summary judgment[2] for the city on the 2 issues which become relevant to this appeal:

(1) The electorate of the city was presumed to know of the State statute so that when they passed § 6.20, it was done within the framework of that statute.

(2) Section 6.20 deals only with parity of compensation which does not equate to a parity of hours, so that there was no rato fixed between the two as a result of the election which would require a corresponding reduction in hours or increase in pay for

---

1 "Section 6.20, Fire and Police Departments: Parity of Compensation.

"(1) Members of the Police and Fire Departments having corresponding classifications, as hereinafter enumerated, and periods of service, shall receive *equal annual compensation,* including equal wages: Police Chief, and Fire Chief; Police Captain, and Fire Captain; Police Lieutenant, and Fire Lieutenant; Police Sergeant, and Fire Sergeant; Police Patrolman, and Firefighter; and other corresponding classifications of the Police and Fire Departments. *No disparity in such annual compensation or wages shall occur or be justified on account of differences between policemen and firemen as to average, normal, regular or customary hours of work or duty* as to furloughs, leaves or leave days, or vacations; nor on account of the hazards or character of such work or duty; nor on account of changes in the titles of classifications, as hereinabove enumerated; nor indirectly, to avoid the intent of this section, *which is to assure parity of compensation and wages to policemen and firemen.* (Emphasis supplied.)

2 GCR 1963, 117.2(1).

the policemen when the hours of the firemen were reduced.

Appeal ensued after plaintiffs-appellants' motion for a rehearing was denied. The firefighters association intervened in this cause, in support of the city, the defendant-appellee.

Plaintiffs admitted that the people are indeed presumed to know the law.[3] However, essential to their correct assumption that a law not yet in effect is of no force or notice to the people[4] is a corresponding showing that the State statute was not in effect when the April 25, 1966, election took place. The statute passed by the 1965 legislature was *effective* March 31, 1966, although not *operative* until July 1, 1966, and was notice to the voters. Plaintiffs would have us find that the legislature intended the 4-month (March–July) gap so that the citizens could have an "opportunity to learn what changes were to be made in the law before these changes should come into operation."[5] However, by using the words

---

[3] *Cargill* v. *Power* (1850), 1 Mich 369; *Hammond* v. *Michigan State Bank* 1843, Walk Ch (Mich) 214.

[4] *Cargill* v. *Power* (1850), *supra:* "No statute has any force until it becomes the law of the land."; *McGavack* v. *Ducharme* (1916), 192 Mich 98: act had no force at law until time it took effect; *Price* v. *Hopkins* (1865), 13 Mich 318.

[5] *Price* v. *Hopkins, supra.* This decision was based on a constitutional provision, now found at Const 1963, art 4, § 27, that no public act shall take effect until 90 days after the end of the session at which it was passed, unless the legislature, by a two-thirds vote, should otherwise direct. Michigan Const 1850, art 4, § 20. The 1965 legislature voted to give the law effect on March 31, 1966. The *Price Case* dealt with an act passed March 20, 1863, to take effect on January 1, 1864, to bar the right of action under the old statute of limitations regarding real property. The court found that the 9-month delay was intended to give people notice to bring suit under the old statute of limitations, but that the act did not take effect until January 1. Thus, the deed to plaintiff-grantee during 1863 was not under the act. The case appears irrelevant to the argument of plaintiff here as no attempt is made to give the law any prior application before that date rightly set by the 1965 legislature, which did provide a full year for the citizens to become informed of the changes before it became effective, and additionally provided 90 days after the close of the 1965 session for this purpose.

"effective March 31, 1966" the 1965 legislature, in the present case, did provide the citizens ample opportunity to become informed of the new law before March 31, 1966, so that they then might take any steps after that time to implement the statute, if so desired, before it became operative on July 1, 1966.

The law of the State can be said to be read into the city charter[6] in this instance, and it is assumed that when the voters agreed that:

"No disparity in such annual compensation shall * * * be justified on account of differences between policemen and firemen as to average, normal, regular or customary hours of work or duty * * * to avoid the intent of this section, which is to assure parity of compensation and wages to policemen and firemen",

they intended that the reduction of the hours of the firefighters as provided in the State statute would have no effect on the parity of compensation.

Plaintiffs create an hours-pay ratio fixed and effective April 25, 1966, of 63/40, which would provide for a corresponding reduction of the ratio to 56/33 on July 1, 1967, and not 56/40 as asserted by the city. This classification is untenable as is the alternative argument that if a reduction in hours is not made, the hourly wages of the policemen should be proportionately increased by the amount of the effective increase in hourly wages of the firefighters (11%) because of the reduction in their hours, while the actual wages of both departments remain constant. We do not agree with plaintiff's contention that since parity of compensation under § 6.20 is distinguished from parity of wages, the voters intended that hours of work be the basic "yardstick

---

[6] *Council of the City of Saginaw* v. *Saginaw Policemen and Firemen Retirement System Trustees* (1948), 321 Mich 641, and cases cited therein.

for measuring compensation".[7]  Rather, the plain language of § 6.20 precludes hours from being considered as part of compensation.

Such a ratio was not fixed as of the date of the election by any "existing framework" which would bind any charter amendment by the electorate to such a ratio regardless of future disparities. Instead, parity was established at the election by an electorate presumed to know that the hours of firefighters would be reduced in the future. A rereading of the portion of subsection 1 of § 6.20 set forth above reinforces our belief and finding that the voters intended that normal or customary working hours of the 2 departments are not relevant to the parity of their compensation, and may fluctuate if their wages remain the same, especially where the normal or customary hours of the firefighters have already effectively been reduced and set by State statute.

Affirmed. No costs, a public question.

All concurred.

---

[7] *Satterly* v. *City of Flint* (1964), 373 Mich 102. Amendment to city charter provided uniform pay plan, but city continued to pay firemen for 44-hour week rather than actual 63-hour week which was worked, in order to achieve parity with policemen's 44-hour week. The 19-hour period where no compensation was paid the firemen had always been considered proper until this action. The court held that firemen do not work a "normal week" as derived from reference to the legislative history of amendments, ordinances and actions of all concerned. The hours spent on the job were *not* relevant to the compensation in *Satterly* just as they are not here. The charter provision is also quite different.