ADVO-SYSTEMS, INC v DEPARTMENT OF TREASURY

Docket No. 120519. Submitted June 4, 1990, at Lansing. Decided December 5, 1990, at 9:08 A.M. Leave to appeal sought.

ADVO-Systems, Inc., sought review by the Michigan Tax Tribunal of a use tax assessment made by the Michigan Department of Treasury on certain mailed packets of printed advertising material, claiming that the materials are exempt as periodicals of general circulation, published at least once a week. The tribunal held that the packets were not periodicals within the meaning of the Use Tax Act and affirmed the assessment. The petitioner appealed.

The Court of Appeals *held:*

The term "periodical", as used in the Use Tax Act, was not intended to include regularly mailed packets of individual advertising materials. The Tax Tribunal correctly found that the plain and ordinary meaning of the term refers to a magazine or similar publication issued at regular intervals, but which, although similar in character, does not qualify as second-class mail under 39 CFR 3001. The petitioner's materials do not fall within this definition.

Affirmed.

SAWYER, P.J., dissenting, stated that nothing within the tax code or the general definition of "periodical" warrants the conclusion that the materials at issue are not exempt. The materials fall within the general definition of periodical, and there is no sound basis for concluding that the Legislature intended a more restrictive definition.

TAXATION — USE TAXES — PERIODICALS.

The term "periodical" as used in the Use Tax Act was not intended to include regularly mailed packets of individual pieces of advertising material; rather, the term refers to a magazine or similar publication (MCL 205.94[n]; MSA 7.555[4] [n]).

REFERENCES

Am Jur 2d, Sales and Use Taxes §§ 216, 222.

What constitutes newspapers, magazines, periodicals, or the like, under sales or use tax law exemption. 25 ALR4th 750.

*Mahoney, Walling & Kelley* (by *Jeffrey C. Robbins*), and *Varnum, Riddering, Schmidt & Howlett* (by *Perrin Rynders*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Richard R. Roesch* and *Ross H. Bishop,* Assistant Attorneys General, for the respondent.

Before: SAWYER, P.J., and MICHAEL J. KELLY and MURPHY, JJ.

MURPHY, J. Petitioner appeals from a judgment of the Michigan Tax Tribunal affirming a use tax assessment against petitioner in the amount of $153,525 plus penalties and interest. We affirm.

Petitioner is a foreign corporation, with its principal executive offices located in Connecticut, which operates a nationwide direct mail business from nineteen production facilities, including a branch facility located in Livonia, Michigan. Petitioner mails advertising material for national and local businesses by third-class bulk mail using a concept known as a "Marriage Mail" package. Under this method, individual pieces of advertising material are combined loosely inside a larger "wrap" piece, which also typically contains advertising. Petitioner's identification and the date of publication of the particular piece are printed in the margin. Additionally at the top of the wrap piece appears a masthead of sorts identifying the piece by its name of "Mailbox Values." In short, Mailbox Values is a collection of the type of advertising supplements one might find in the Sunday newspaper contained under the outside wrap piece.

Mailbox Values is accompanied by a mailing card, apparently required by the post office. On the back side of the card appears additional advertis-

ing. On the front, the return address, the bulk-rate postage paid notice, and a space to affix a mailing label are printed. In the right-hand portion of the front side, an announcement and photograph of a missing child appear, along with a phone number for the recipient to contact if they have any information relating to that child.

Petitioner's customers use its service to save the postage costs of mailing separately their advertisements. The entire collection constitutes one mailing piece and, thus, is subject to one postage charge. Petitioner does not print the individual advertising pieces contained within Mailbox Values. Instead, it either utilizes preprinted advertising materials supplied by a customer or arranges for an independent printer to print the customer's advertising piece and deliver the finished product to petitioner for inclusion in Mailbox Values.

Mailbox Values is distributed free of charge on a weekly basis to approximately three million residential mail customers in Michigan and forty-five million households nationwide. Presumably, each week's edition varies in the content of retailers' advertising materials.

At issue in this case is the use tax which respondent claims is due on the printed materials provided to petitioner for inclusion in its mailer on which no sales or use tax was paid. Petitioner claims that it is exempt from the use tax on these materials under MCL 205.94(n); MSA 7.555(4)(n), which exempts newspapers and other periodicals and materials consumed in producing such newspapers and periodicals from liability for the use tax. The amount of tax due, along with penalty and interest, is not in dispute, if we determine that petitioner owes the tax. Rather, petitioner and respondent disagree over whether petitioner is subject to the tax. The Tax Tribunal ruled in

respondent's favor. The hearing officer concluded "that a 'periodical' is intended to refer to a publication more akin to a magazine or a publication having articles or literary content and being a part of a serial or series and probably has some subscribers rather than the ADVO 'Marriage Mail' advertising package." The Tax Tribunal agreed, finding that the Legislature's use of the word periodical in two of the four use tax exemptions indicated an intent that the term have a consistent meaning throughout § 4(n). "While we agree that a periodical need not necessarily contain a series of articles, we conclude that it is something more than a loose collection of unsolicited advertisements delivered to households by direct mail."

On appeal, petitioner argues that Mailbox Values qualifies as a "periodical" within the scope of the exemption set forth in § 4(n), which provides:

A newspaper or periodical classified under federal postal laws and regulations effective September 1, 1985 as second class mail matter or as a controlled circulation publication or qualified to accept legal notices for publication in this state, as defined by law, or *any other* newspaper or *periodical of general circulation, established at least 2 years, and published at least once a week,* and a copyrighted motion picture film. Tangible personal property used or consumed, and not becoming a component part of a newspaper or periodical, except that portion or percentage of tangible personal property used or consumed in producing an advertising supplement that becomes a component part of a newspaper or periodical, and a copyrighted motion picture film is subject to tax. For purposes of this subdivision, tangible personal property that becomes a component part of a newspaper or periodical, and thereby not subject to tax, shall include an advertising supplement inserted into and circulated with a newspaper or periodical which is otherwise exempt from tax

under this subdivision, if the advertising supplement is delivered directly to the newspaper or periodical by a person other than the advertiser, or the advertising supplement is printed by the newspaper or periodical.

The statute exempts four classifications of publications, as well as tangible personal property used or consumed in producing an advertising supplement to such newspaper or periodical. Petitioner does not claim that it comes under the first three provisions: as a periodical classified as second-class mail matter, as a controlled circulation publication, or as a publication qualified to accept legal notices. Rather, petitioner maintains that it constitutes "any other newspaper or periodical of general circulation, established at least 2 years, and published at least once a week." Respondent admits that Mailbox Values has been established at least two years and is published at least once a week, but argues that it is not a "periodical of general circulation." We agree.

Tax exemptions are the antithesis of tax equality. Therefore, they are strictly construed against the taxpayer. *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 243; 362 NW2d 618 (1984); *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753-754; 298 NW2d 422 (1980). Exemption statutes are, nevertheless, interpreted according to ordinary rules of statutory construction. *Ass'n of Little Friends, Inc v Escanaba,* 138 Mich App 302, 307; 360 NW2d 602 (1984).

Common sense should be applied when construing a statute. *Panich v Iron Wood Products Corp,* 179 Mich App 136, 141; 445 NW2d 795 (1989). When a statute is unambiguous, it must be applied as written. *Achtenberg v East Lansing,* 421 Mich 765, 770; 364 NW2d 277 (1985). To that end, words

and phrases in a statute are construed and understood according to their common and approved usage, unless they are otherwise defined in a statute or the construction is inconsistent with the manifest intent of the Legislature. MCL 8.3a; MSA 2.212(1); *Town & Country, supra,* 241-242.

The use of dictionary definitions is appropriate in interpreting undefined statutory terms. *Swift v Kent Co,* 171 Mich App 390, 393; 429 NW2d 605 (1988). However, recourse to the dictionary is unnecessary when the legislative intent may be readily discerned from reading the statute itself. *Renown Stove Co v Unemployment Compensation Comm,* 328 Mich 436, 440; 44 NW2d 1 (1950). Under petitioner's reasoning, we must accept, without question, the dictionary definition to be the plain and ordinary meaning of the term "periodical" as used in § 4(n). *The Random House College Dictionary* (rev ed, 1984), p 987, defines "periodical" as follows:

> *n.* 1. a magazine or other publication that is issued at regularly recurring intervals. —*adj.* 2. published at regularly recurring intervals. 3. of or pertaining to such publications. 4. periodic.

Additionally, *Random House, supra* at 1069, defines "publication" and "publish" as follows:

> publication . . . *n.* 1. the act of publishing. 2. the act of bringing to public notice. 3. the state or fact of being published. 4. something that is published, esp. a periodical. . . .
>
> \*   \*   \*
>
> publish . . . *v.t.* 1. to issue (printed or otherwise reproduced textual or graphic material) for sale or distribution to the public. 2. to issue publicly the work of (an author, artist, etc.). 3. to announce formally or officially. 4. to make publicly or gener-

ally known. —*v.i.* 5. to engage in the publishing to textual or graphic material. 6. (of an author) to have work published.

After reviewing these definitions, we conclude that adoption of the dictionary definition of periodical unnecessarily broadens the scope of the exemption granted by the Legislature. Dictionary definitions, while instructive, are not conclusive authority regarding the meaning of statutory terms; they are merely useful tools which may be used as guidance. Under the established rules of statutory construction, the "plain and ordinary" meaning of a statutory term controls. By its very nature, a dictionary definition, which seeks to provide the most complete description possible of a particular word's meaning, may be broader in scope than the "plain and ordinary" meaning of the word as it is commonly used and understood.

" 'It is only as custom and usage and agreement attach a particular meaning to a particular word that it has any significance in relation to either a tangible or an intangible object.' " *Satterley v City of Flint,* 373 Mich 102, 110; 128 NW2d 508 (1964), quoting 2 Sutherland's Statutory Construction, § 4502, pp 316, 317. The plain-meaning rule of statutory construction presumes that words in a statute had the same meaning for those who authored it as it has for those who read it. *People v Gilbert,* 414 Mich 191, 199; 324 NW2d 834 (1982). As it is commonly used and understood, the term "periodical" has a somewhat narrower meaning than the dictionary definition. In reality, as the term is commonly used and understood, a periodical is synonymous with a publication similar to a magazine. We may assume that the Legislature also attached this same connotation to the word it chose or at least was aware that it would have this

meaning for most people reading the statute. Moreover, we recognize that administrative interpretations of a statute by the agency responsible for the statute's execution are to be accorded deference and reviewed with respectful consideration. *Oakland Schools Bd of Ed v Superintendent of Public Instruction,* 401 Mich 37, 41; 257 NW2d 73 (1977); *Odette v Liquor Control Comm,* 171 Mich App 137, 142; 429 NW2d 814 (1988). Thus, we agree with the Tax Tribunal that the plain and ordinary meaning of the term periodical may be more appropriately stated as a magazine or similar publication that is issued at regularly recurring intervals but which, although similar in character, does not qualify as second-class mail under the very specific requirements of 39 CFR 3001 (1989). We conclude that Mailbox Values, which essentially is nothing more than a loose-leaf collection of advertising materials, does not fall under this definition.[1]

Moreover, we conclude that adoption of a broad

---

[1] Petitioner relies on a Minnesota case, *United Hardware Distributing Co v Comm'r of Revenue,* 284 NW2d 820 (Minn, 1979), to support its argument that the Tribunal's construction imposes a content-based limitation on the exemption that is not expressed in the statute. In that case, the Minnesota Supreme Court held that reading a request that a publication contain some news, information, articles, or commentary of interest to the public into a use-tax exemption similar to § 4(n) was an unwarranted limitation of the exemption which was not justified by the statutory language. *Id.,* 822. However, we distinguish *United Hardware* from the present case because the statute there at issue exempted "any *publication* regularly issued at average intervals not exceeding three months." *Id.,* 821, n 1. (Emphasis supplied.) The court rejected the respondent's argument that the "normal and common meaning" of a publication is a periodical. *Id.,* 822. Clearly, the term "publication" encompasses a broader concept than "periodical."

Moreover, courts in other jurisdictions have reached the opposite result. See *G & B Publishing Co v Dep't of Taxation & Finance,* 57 AD 18, 20-21; 392 NYS2d 938 (1977); *Shoppers Guide Publishing Co, Inc v Woods,* 547 SW2d 561, 563-564 (Tenn, 1977); *Green v Home News Publishing Co, Inc,* 90 So 2d 295, 296 (Fla, 1956). See also 25 ALR4th 750.

definition of the term periodical results in a con-
struction of MCL 205.94(n); MSA 7.555(4)(n) that is
contrary to legislative intent. Under the exemp-
tion granted in § 4(n), the individual advertising
materials collected in Mailbox Values would be
tax exempt when they are actually printed on the
pages of a qualifying newspaper or periodical or
are inserted as supplements of such a publication.
However, advertising materials remain taxable
when distributed in any manner other than those
exempted. In other words, if the individual adver-
tisers of any publication, including petitioner,
choose to distribute these same advertisements at
their place of business, by hand delivery, or by
other than second-class mail, their advertising
materials are subject to the use tax. See House
Legislative Analysis, HB 5291, January 23, 1986.[2]

The underlying purpose for exempting certain
types of publications from the burden of sales and
use taxes is to protect and promote the exercise of
a free press as guaranteed under the First Amend-
ment. This goal is furthered by including supple-
mental advertising materials, from which the ex-
empt publications derive income, within the scope
of this exemption. See *Sears, Roebuck & Co v
State Tax Comm,* 370 Mass 127, 130-131; 345 NE2d
893 (1976). Common sense leads us to conclude
that allowing petitioner to attain tax exempt sta-
tus by simply joining otherwise taxable materials
under a single cover and mailing them out on a
weekly basis does nothing to further the legislative

[2] The bills would grant tax exempt status to those supplements
which were printed by a newspaper or delivered directly to the
newspaper from the printer. *Supplements distributed in another
manner, whether in the advertiser's store or mailed as other than
second class mail, would continue to be taxable.* However, the bills
would not prevent an advertiser from having all the copies of a
supplement delivered to the newspaper and then picking up the extra
copies for another method of distribution after the tax exemption has
been obtained. [Emphasis supplied.]

purpose behind the use tax exemption set forth in MCL 205.94(n); MSA 7.555(4).

Affirmed.

MICHAEL J. KELLY, J., concurred.

SAWYER, P.J. *(dissenting).* I respectfully dissent.

At first blush, it is tempting to dismiss petitioner's claim that Mailbox Values is a periodical within the meaning of the tax code since, with the exception of the public service announcement relating to missing children on the accompanying mailing card, Mailbox Values contains nothing but a loose-leaf collection of advertising materials. However, for the reasons to be discussed below, I conclude that nothing within the tax code itself or within the general definition of the word "periodical" warrants such a conclusion.

MCL 205.94; MSA 7.555(4) contains a list of various exemptions from the use tax, and subsection (n) provides:

> A newspaper or periodical classified under federal postal laws and regulations effective September 1, 1985 as second class mail matter or as a controlled circulation publication or qualified to accept legal notices for publication in this state, as defined by law, or *any* other newspaper or *periodical of general circulation, established at least 2 years, and published at least once a week,* and a copyrighted motion picture film. Tangible personal property used or consumed, and not becoming a component part of a newspaper or periodical, except that portion or percentage of tangible personal property used or consumed in producing an advertising supplement that becomes a component part of a newspaper or periodical, and a copyrighted motion picture film is subject to tax. For purposes of this subdivision, tangible personal property that becomes a component part of a

newspaper or periodical, and thereby not subject to tax, shall include an advertising supplement inserted into and circulated with a newspaper or periodical which is otherwise exempt from tax under this subdivision, if the advertising supplement is delivered directly to the newspaper or periodical by a person other than the advertiser, or the advertising supplement is printed by the newspaper or periodical. [Emphasis supplied.]

Thus, an exemption is established for four classifications of publications as well as for tangible personal property used or consumed in producing an advertising supplement to such newspaper or periodical. Petitioner does not claim that it comes under the first three provisions; rather, petitioner maintains that Mailbox Values constitutes "any other newspaper or periodical of general circulation, established at least 2 years, and published at least once a week . . . ." While it is admitted that Mailbox Values has been established at least two years and is published at least once a week, respondent argues that it is not a "periodical of general circulation." I disagree.

As the majority notes, exemption statutes are to be strictly construed in favor of the taxing unit; however, those statutes are nevertheless to be interpreted by applying the ordinary rules of statutory construction. *Ass'n of Little Friends, Inc v Escanaba,* 138 Mich App 302, 307; 360 NW2d 602 (1984). Turning to the question whether petitioner's publication constitutes a "periodical" as that word is used in § 4(n) of the Use Tax Act, the word "periodical" is not otherwise defined in the statute, and, therefore, we must assign it its ordinary meaning. *Niggeling v Dep't of Transportation,* 183 Mich App 770, 775; 455 NW2d 415 (1990).

*The Random House College Dictionary* (rev ed, 1984), p 987, defines "periodical" as follows:

*n.* 1. a magazine or other publication that is issued at regularly recurring intervals. —*adj.* 2. published at regularly recurring intervals. 3. of or pertaining to such publications. 4. periodic.

Additionally, *Random House, supra* at 1069, defines "publication" and "publish" as follows:

> publication . . . *n.* 1. the act of publishing. 2. the act of bringing to public notice. 3. the state or fact of being published. 4. something that is published, esp. a periodical. . . .
>
> *     *     *
>
> publish . . . *v.t.* 1. to issue (printed or otherwise reproduced textual or graphic material) for sale or distribution to the public. 2. to issue publicly the work of (an author, artist, etc.). 3. to announce formally or officially. 4. to make publicly or generally known. —*v.i.* 5. to engage in the publishing to textual or graphic material. 6. (of an author) to have work published.

With these definitions in mind, I must conclude that Mailbox Values constitutes a "periodical." Mailbox Values is published inasmuch as it is the printed use of textual or graphic materials for distribution to the public, making it a publication, and it is issued at regular intervals (weekly), making it a periodical.

The tribunal in its decision concluded that the word "periodical" must be read as being a periodical entitled to second-class mail classification. The tribunal's conclusion, however, is incorrect. The tribunal reasoned that the Legislature must have intended the word "periodical" to have the same meaning when used in the classification of a periodical classified as second-class mail and in the classification of periodicals of general circulation:

> While petitioner may argue, as it did in its Brief

for Reconsideration, that the Tribunal should expand the meaning of the phrase "periodical of general circulation" to beyond that of a periodical entitled to second class mail, such an argument is clearly without merit in light of the established rules of statutory construction. Had the legislature intended the word "periodical" to have one meaning in the phrase ". . . (a) . . . periodical classified under present federal postal laws and regulations as second class mail matter . . ." and a different meaning in the phrase " . . . periodical of general circulation, established at least two years, and published at least once a week . . ." then the legislature, having modified the word "periodical" by use of the words "of general circulation, established at least two years and published at least once a week", would certainly have further modified this word. Since it chose not to do so, we must conclude that the legislature intended the word "periodical" to have a consistent meaning throughout section [4](n).

While the tribunal is correct that the word "periodical" must be given the same meaning throughout the statute, it does not follow that that meaning must include the content regulations applicable to second-class mail. Indeed, the rules of statutory construction require that we define "periodical" as being some class of entities larger than that which constitutes second-class mail. All provisions of a statute must be construed so as to give them meaning, because none of the language of the statute should be treated as surplusage or rendered nugatory. *Niggeling, supra* at 775. If it is concluded that the Legislature intended the word "periodical" to be used throughout the statute as referring to periodicals qualified as second-class mail, then the statutory provision applying to periodicals of general circulation would be rendered nugatory. That is, since the statute exempts all newspapers and periodicals qualified as second-

class mail, the provisions relating to periodicals of general circulation established at least two years and published at least weekly would be unnecessary since, if such a restricted definition of "periodical" were accepted, all such periodicals would already be included within the general exemption.

Accordingly, in order to give both provisions of subsection (4)(n) meaning, the Legislature must have intended a definition of "periodical" which is broader than both second-class mail and periodicals of general circulation. Having created such a general class of "periodicals," the Legislature then established two subcategories, those of second-class mail and those of general circulation established at least two years and published weekly, which qualify for the use tax exemption. Accordingly, the conclusion that the Legislature, in using the word "periodical," implicitly adopted the content regulations applicable to second-class mail in defining the word as it is used with respect to the exemption at issue here must be rejected.

Given the general definition of "periodical" as quoted above, to exclude petitioner's publication from that definition would necessitate the adoption of some form of content regulation akin to that adopted to classify second-class mail. It is not, however, this Court's role to adopt such content regulation. First, if the Legislature wishes there to be content regulation, it certainly can place such regulation into the statute. Indeed, the version of the statute created by 1953 PA 203 included content regulation in the exemption of periodicals of general circulation, requiring that they contain at least twenty percent local news matter. This requirement was removed when the section was rewritten in 1970. See 1970 PA 15. It is inappropriate for this Court to reinsert into the statute that which the Legislature saw fit to remove.

Furthermore, any such regulation imposed by this Court would be arbitrary. While there may exist good reasons to require some nonadvertising content in a publication to qualify for the use tax exemption, that determination, as well as a determination of how much of that material must be contained in a publication to qualify for an exemption, is a matter which must be addressed by the Legislature, not this Court.

Respondent also argues that the Legislature, in adopting the 1986 amendment of the statute, drew a distinction between "periodicals" and "advertising supplements" by adding to the provisions relating to the exempt status of advertising supplements when included in exempt newspapers and periodicals. I do not, however, share respondent's interpretation of the Legislature's purpose in enacting the amendment. The reasons behind the 1986 amendment were discussed in a report by the House Legislative Analysis Section, House Legislative Analysis, HB 5291, January 23, 1986, which states in pertinent part:

> The law exempts the sale of a newspaper or periodical from sales and use taxes. The statutes make reference to those newspapers and periodicals classified under federal postal laws and regulations as second class mail. Until recently the federal regulations included advertising supplements and the supplements were therefore exempt from state sales and use taxes. Even though changes in federal regulations have omitted references to advertising supplements, the Department of Treasury generally has continued to treat advertising supplements as tax exempt. Some people believe the practice should be specifically authorized in statute. Further, under the sales and use tax acts, the purchase or lease of industrial processing equipment generally is tax exempt, but tangible personal property used or consumed in

printing which does not become a component part of the tax exempt newspaper or periodical is subject to taxation. Thus, some people believe that if advertising supplements are to be considered a "component part" of newspapers, an exception should be made for equipment used to print advertising supplements, so that persons printing the supplements would not lose the industrial processing exemption they now possess.

I do not believe that it was the intent of the Legislature in adopting the 1986 amendment either to clarify the definition of the word "periodical" or to draw distinctions between periodicals and advertising supplements. Rather, because of the statute's use of federal postal regulations relating to second-class mail, changes in those regulations resulted in some items which had previously been treated as exempt as being potentially no longer exempt. The purpose of the amendment, therefore, was to restore the exemption status to those items. I attach no greater significance to the 1986 amendment than that.[1]

In the final analysis, neither respondent nor the Tax Tribunal provides any reason to conclude that petitioner's publication does not constitute a "periodical." Indeed, neither respondent nor the tribunal provides much of a definition of "periodical" other than the assertion that it must be something other than petitioner's publication, being a loose assortment of advertising materials. I decline, however, to adopt a "we know it when we see it"[2]

---

[1] It should also be noted that, strictly speaking, petitioner's publication is not an advertising supplement. While it is advertising, it cannot be deemed a supplement since it is not included with any other newspaper or periodical. Since it supplements nothing, it cannot be an advertising supplement. Thus, the subject of the 1986 amendment, advertising supplements, does not directly bear on the issue before us.

[2] See *Jacobellis v Ohio,* 378 US 184, 197; 84 S Ct 1676; 12 L Ed 2d 793 (1964) (Stewart, J., concurring).

standard for determining what is a periodical. Rather, the general definitions of the word should be consulted, which encompass petitioner's publication. If respondent sees the need for a more restrictive definition of the word, it should approach the Legislature.

Indeed, this is precisely why I cannot join the majority's decision. The majority, concluding that the word "periodical" should be read more narrowly than the dictionary definition, creates an amorphous definition that provides little guidance beyond the conclusion that Mailbox Values is not a periodical. The majority, with no citation of authority, concludes that the commonly understood meaning of "periodical" is something "similar to a magazine." *Ante* at 425. In so doing, the majority adopts a "we know it when we see it" standard to read into the statute a content requirement which the Legislature specifically chose not to include. While the majority advances some strong policy reasons why petitioner's publication should not enjoy tax-exempt status, reasons with which I do not necessarily disagree, these considerations should be left to the Legislature, which can amend the statute if it sees the need to do so. I would, therefore, affirm.[3]

---

[3] The tribunal also concluded that petitioner's publication was not entitled to tax-exempt status since it was not "of general circulation." Since the majority does not reach this issue, I do not analyze it at length. I would, however, conclude that, in light of the large number of households which receive Mailbox Values, it enjoys "general circulation."