# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CREIGHTON RONEE MCCULLOUGH,

      Defendant-Appellant.

UNPUBLISHED
April 19, 2018

No. 337600
Bay Circuit Court
LC No. 16-010547-FH

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of domestic violence, third offense, MCL 750.81(5). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 60 to 240 months' imprisonment. We affirm.

Defendant's conviction arose from a July 26, 2016 altercation with his wife, from whom he was separated. Although she threw a drink at defendant, he struck her on the side of her head with his hand and told her to get in the house, where he pushed her down and proceeded to choke her.

The prosecution offered defendant a plea agreement before trial that would have removed his habitual offender designations in this matter, and would have dismissed charges against defendant in another matter. Defendant was informed by the trial court that he faced a possible term of incarceration of life imprisonment due to his fourth habitual offender designation. MCL 769.12(1)(b) provides that a habitual offender with three or more felonies is subject to a term of life imprisonment or a lessor term for a crime with a maximum term of five years' imprisonment or more. Thus, by accepting the plea, defendant could have reduced his potential maximum sentence from life imprisonment to five years' imprisonment.

Defense counsel, Matthew Reyes, stated on the record that he had discussed the pros and cons of the plea agreement with defendant, as well as the possible minimum sentencing guidelines ranges if defendant was convicted as charged or accepted the plea agreement. Defendant stated that he understood the plea agreement and that the trial court could impose a life sentence if he were convicted as charged. Regardless, defendant rejected the plea agreement.

-1-

Following trial, defendant discharged Reyes, obtained new counsel, and moved for a new trial based on ineffective assistance of counsel. He argued that he faced a considerably longer minimum term of imprisonment after trial than his maximum term of imprisonment under the plea agreement, and alleged that "had [he] realized the extent of his exposure he would have taken the plea agreement."

The court held a hearing on defendant's motion at which Reyes testified that he and defendant looked at the sentencing grid book and estimated defendant's minimum guidelines range at 12 to 48 months' imprisonment, or depending on what offense variable points were assessed at sentencing, up to 58 months' imprisonment. Reyes stated that he told defendant that the trial judge would make the final decision on the guidelines range and might disagree with the parties' calculations, that the court could depart from any guideline range and sentence him to a longer term of imprisonment, and that counsel's estimates were not guaranteed. The court denied defendant's motion for a new trial and calculated defendant's minimum guidelines range at 19 to 76 months. As previously stated, it imposed a minimum sentence of 60 months' imprisonment.

Defendant argues that he received ineffective assistance of counsel where Reyes incorrectly calculated his possible guidelines and advised him to go to trial, and further that the trial court therefore erred in denying his motion for a new trial. We disagree.

This Court reviews a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion. *People v Lonsby*, 248 Mich App 375, 382; 707 NW2d 610 (2005). However, "[w]hether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). A trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* at 188.

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), citing *Strickland*, 466 US at 694–696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

"As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). A defendant seeking relief for ineffective assistance in this context must also meet *Strickland*'s familiar two-pronged standard by showing (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at 164. "In demonstrating prejudice, the 'defendant must show the outcome of the plea process would have been different with competent advice.' " *Id*. "Where, as here, the alleged prejudice resulting from counsel's ineffectiveness is that the defendant rejected a plea agreement and stood trial,"

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea agreement would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*.]

"Defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *Douglas*, 496 Mich at 592, citing *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant's ineffective assistance of counsel claim hinges on two assertions: (1) that Reyes miscalculated his guidelines while advising him on the plea agreement; and (2) that Reyes erroneously advised him to reject the plea agreement based on those miscalculated guidelines. Defendant contends that as a result, he is entitled to reinstatement of the proposed plea agreement. "When ineffective assistance of counsel is claimed in the context of a plea, the pertinent inquiry is whether the defendant tendered the plea voluntarily and understandingly." *People v Armisted*, 295 Mich App 32, 48-49; 811 NW2d 47 (2011), citing *People v Swirles (After Remand)*, 218 Mich App 133, 138; 553 NW2d 357 (1996).

Defendant's claim that counsel miscalculated his guidelines is misguided. It is unreasonable to say that counsel miscalculated the guidelines in advising defendant where counsel advised that the figures provided were variable estimates. Logically, for a range of figures to be miscalculated, there must be a "correct" range of figures. It does not follow that a sentencing estimate can be "miscalculated" where it is inherently nebulous before the sentencing hearing. Also, defendant cannot logically assert that he rejected the plea agreement due to miscalculation, because defendant knew his sentence could be up to life in prison. Moreover, estimates at the time of a plea agreement can be affected by facts that came out during trial that were not so obvious at the time of the plea agreement. As trial counsel made clear to defendant, his estimates were not guarantees.

Defendant next argues that he did not make a knowing and intelligent choice to go to trial, because if he had known that after trial, the trial court could have sentenced him to a longer minimum sentence than what had been offered under the plea agreement, he would have accepted the plea agreement. The record does not support defendant's contention. Rather, our review of the records supports our conclusion that defendant was well apprised of all possible outcomes prior to rejecting the plea agreement. Although defendant argues he believed the longest minimum term of imprisonment would be 48 months if he rejected the plea agreement, Reyes testified he informed defendant that if convicted, he would likely face a sentence between 12 and 48 months' imprisonment, or up to 58 months, depending on how the court assessed OV scores. Reyes further testified that he qualified his advice, stating that the estimated guidelines

range was only probable, that the court could disagree with his calculations, that his calculations were "no guarantee," that the court could upwardly depart from the guidelines, and that he could be sentenced to life in prison. Further, the trial court expressly informed defendant of a possible maximum sentence of life imprisonment. Clearly, defendant was advised of the advantages and disadvantages of rejecting the plea agreement. *Padilla v Kentucky*, 559 US 356, 370; 130 S Ct 1473; L Ed 2d 284 (2010) (noting "the critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement"); *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995) (explaining that counsel must provide advice during plea negotiations that is sufficient to allow the defendant "to make an informed and voluntary choice between trial and a guilty plea").

Moreover, defendant has failed to establish he did not understand the plea agreement. Defendant contends that counsel estimated his guidelines incorrectly and did not advise him that he could receive a minimum sentence after trial that would be higher than the maximum sentence provided in the plea agreement. This contention is not supported by the record. Defendant was advised by both counsel and the trial court that he could face a maximum sentence far in excess of that offered in his plea agreement – life in prison instead of five years. Further, the trial court found that "Mr. Reyes told him that [the estimated calculation was] not a sure thing," and Reyes testified that he advised that the trial court could always depart from the minimum sentencing guidelines range. Further, before rejecting the plea agreement, defendant testified under oath that he fully understood it.

Defendant also averred that he understood "life" in prison to mean "like, twenty years" in prison. We cannot accept defendant's contention that he possessed a different understanding of "life" in prison as a basis for vacating his sentence. "A word is but a symbol which may stand for one of an innumerable number of objects. It is only as custom and usage and agreement attach a particular meaning to a particular word that it has any significance in relation to either a tangible or an intangible object." *Satterley v City of Flint*, 373 Mich 102, 110; 128 NW2d 508 (1964). "Life" means "natural life," and not "like twenty years." Defendant himself admitted that he had a different understanding of "life" in prison than "everyone else."

The record shows that defendant knew the terms of the plea available to him, and the consequences he faced in rejecting that plea. "The decision to plead guilty first, last, and always rests with the defendant, not his lawyer. . . . [T]he ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction." *Smith v United States*, 348 F3d 545, 552 (CA 6, 2003). Given defendant's unambiguous confirmation in open court that he understood the plea agreement, coupled with counsel's assurances to defendant that nothing about the sentencing estimate they fashioned together was confirmed, we cannot conclude that defense counsel's performance fell below an objective standard of reasonableness. Accordingly, we need not analyze defendant's claim under the second prong of *Strickland*. Further, based on the foregoing, we conclude that where the record clearly supports the trial court's finding that defendant knowingly and intelligently rejected the plea agreement, we are not left with a definite and firm conviction that the trial court clearly erred by denying defendant's motion for a new trial. *Trakhtenberg*, 493 Mich at 47.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle