PERRY DRUG STORES, INC v DEPARTMENT OF TREASURY

Docket No. 197259. Submitted February 11, 1998, at Lansing. Decided May 5, 1998, at 9:00 A.M. Leave to appeal sought.

Perry Drug Stores, Inc., brought an action in the Court of Claims against the Department of Treasury, seeking a refund of single business taxes paid on purchase discounts received from suppliers for early payment for purchases. The plaintiff contended that such discounts should be treated as interest income, which is not subject to the single business tax. The court, James R. Giddings, J., on cross-motions for summary disposition, granted the plaintiff's motion and entered a judgment in its favor. The defendant appealed.

The Court of Appeals *held*:

"Interest" is compensation allowed by law or fixed by parties for the use or forebearance of money. A purchase discount is a partial rebate of the purchaser's invoice amount as an incentive for early payment. Although there is a time element to a purchase discount, it does not rely on the time value of money for the price differential and therefore does not involve interest.

Reversed.

TAXATION — SINGLE BUSINESS TAX — PURCHASE DISCOUNTS.

A discount received by a purchaser from a seller for early payment for a purchase is not interest income that is deductible from the purchaser's tax base when calculating the purchaser's single business tax liability (MCL 208.9[7][b]; MSA 7.558]9][7][b]).

*Butzel Long* (by *William R. Ralls* and *Leland R. Rosier*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Kevin T. Smith*, Assistant Attorney General, for the defendant.

Before: MCDONALD, P.J., and SAWYEr and HOEKSTRA, JJ.

SAWYER, J. Defendant appeals from a judgment of the Court of Claims in favor of plaintiff on plaintiff's claim for a refund under the Michigan Single Business Tax Act (SBTA), MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.* We reverse.

Plaintiff is a Michigan corporation engaged in the business of retail sales of prescription drugs and other merchandise. At issue is plaintiff's treatment of discounts it received during fiscal years ending in 1986, 1987, 1988, and 1989. Plaintiff paid single business tax (SBT) on those amounts, but thereafter filed amended returns seeking refunds, categorizing those discounts as not subject to the SBT. Defendant denied the refunds and plaintiff brought the instant action in the Court of Claims.

The discounts at issue are those earned for prompt payment of purchases on credit. For example, the terms of a sale may be 2/10, net 30—payment is due within thirty days, but a two percent discount may be taken if payment is made within ten days. Plaintiff argues, and the trial court agreed, that those discounts should be treated as interest income, which is not subject to the SBT. We disagree.

The dispute has its genesis in part because of how the SBT is calculated. A taxpayer takes its federal taxable income, to which certain adjustments are made. The adjustments are necessary because the federal tax is a tax on income (i.e., profits), while Michigan's SBT is more akin to a value-added tax. See Haughey, *The economic logic of the single business tax*, 22 Wayne L R 1017 (1976). Thus, adjustments are made to add back items that reduce profit and therefore taken as deductions from the federal income tax, but do not reduce the value added to the product during

production, such as compensation, MCL 208.9(5); MSA 7.558(9)(5), as well as dividends, interest, and royalties paid by the taxpayer, MCL 208.9(4)(d), (f), and (g); MSA 7.558(9)(4)(d), (f), and (g). Similarly, items such as interest, dividends, and royalties received by the taxpayer are removed from the tax base for calculation of the SBT, MCL 208.9(7)(a), (b), and (c); MSA 7.558(9)(7)(a), (b), and (c), because, although those items represent income for federal tax purposes, they do not represent value added to the product. That is, they do not result from the use of capital by the recipient. See Kasischke, *Computation of the Michigan single business tax: Theory and mechanics*, 22 Wayne L R 1069 (1976).

The question posed in this case is whether purchase discounts constitute interest under the SBT and, therefore, are deductible in determining the tax base for calculation of the SBT. We conclude that they are not.

Plaintiff's argument hinges on the fact that those discounts may be treated as income for federal income tax purposes. Plaintiff argues that we must, therefore, treat them as interest income under the requirements of MCL 208.2(2); MSA 7.558(2). We disagree.

First, we are not persuaded that purchase discounts are necessarily defined as interest income under federal tax law. At most, federal tax regulations allow them to be treated as income. 26 CFR 1.471-3. And it is not necessarily the case that they should be treated as interest income. That regulation defines inventory cost basis as

the invoice price less trade or other discounts, except strictly cash discounts approximating a fair interest rate,

which may be deducted or not at the option of the tax-
payer, provided a consistent course is followed.

The option referred to in the regulation acknowl-
edges that there are two generally accepted ways of
accounting for purchase discounts. See Kieso & Wey-
gandt, *Intermediate Accounting* (8th ed), p 387 (John
Wyley & Sons, Inc, 1995). The first is the gross
method, by which the purchases account is debited,
and the accounts payable account is credited, for the
full invoice price. When the bill is paid, the accounts
payable account is debited for the full amount and, if
the discount is taken, the cash account is credited for
the actual amount paid and a "Purchase Discounts
Taken" account is credited with the amount of the
discount.[1]

Under the net method, at the time of purchase, the
purchases account is debited, and the accounts paya-
ble account is credited, with the purchase amount
less the anticipated discount. If the discount is not
ultimately taken, then the cash account is credited
with the full payment amount when payment is made,
while the accounts payable account is debited with
the amount of the purchase (less the discount not
taken) and a "Purchase Discounts Lost" account is
debited by the amount the discount would have
been.[2] The Purchase Discounts Lost account becomes
an expense account.

Plaintiff utilizes the gross method to account for
the purchase discounts. It argues that the Purchase

---

[1] If the discount is not taken, then the cash account is credited with the
entire amount.

[2] If the discount is taken, then the cash account is credited with the
reduced amount actually paid.

Discounts Taken account should be treated as interest income and, therefore, excluded from the SBT tax base. The fact that it may be acceptable to the Internal Revenue Service for plaintiff to treat Purchase Discounts Taken as income for federal tax purposes is not, in our view, dispositive of how those discounts should be treated for SBT purposes.

First, because of the nature of the federal income tax, it is not critical how the income is treated. Both the gross and net methods are accepted by the IRS because either method reaches the same amount of federal tax owed. See Revenue Ruling 73-65. That is, whether a taxpayer uses the net method to create an income account for discounts taken or an expense account for discounts lost, the amount of federal income tax owed remains the same. *Id.*[3]

---

[3] An illustration might help illuminate this point. Let us say that XYZ Company buys widgets for $10,000 and sells them for $15,000. The IRS expects tax to be paid on the $5,000 profit. Let's assume that there is a two percent purchase discount available—a $200 savings if the invoice is paid within ten days.

A taxpayer who employs the gross method of accounting would still report a purchase cost of $10,000 with a profit of $5,000. However, it would also report the discount taken as income subject to tax. Therefore, it would report a taxable income of $5,200—a $5,000 profit from sales and $200 in income from the discount (or what plaintiff would label as "interest income"). If no purchase discount were taken (because the invoice was not paid within ten days), then only the $5,000 profit would be reported as taxable income.

A taxpayer employing the net method would report the purchase cost as being $9,800 (the $10,000 purchase price less the purchase discount) whether the purchase discount was taken or not. If the discount is, in fact, taken, then the taxpayer would report a $5,200 profit as taxable income (and no other income for the discount). If the discount was not taken, then the taxpayer would report a $5,200 profit and deduct a $200 expense for the expense item of Purchase Discounts Lost, resulting in a taxable income of $5,000.

In either case, the IRS is satisfied—the taxpayer pays tax on $5,200 if the discount is taken and on $5,000 if it is not. Because both methods arrive

However, both methods do *not* arrive at the same tax for purposes of Michigan's SBT. That is because, while the federal income tax is a tax on income, the SBT is a modified value-added tax. Therefore, its treatment of interest income differs from how interest income is treated under an income tax. Thus, unlike under federal tax law, it is critical under the SBTA whether we treat purchase discounts as interest income or not.

The Michigan Supreme Court addressed the definition of "interest" within the context of the SBTA in *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226; 362 NW2d 618 (1984). For comparative purposes, a detailed explanation of the transaction in *Town & Country* is helpful. The Court, in pertinent part, described it as: a customer buys a car for $10,000. He puts down a deposit of $2,000 and finances $8,000 over three years at sixteen percent. After taking into account the time value of money,[4] a $26.57 time-price differential charge per $100 is assessed for a total time-price differential charge of $2,125.60 (26.57 × 80), making total payments to the dealer on the contract of $10,125.60. The dealer then takes the contract, extended over three years, and discounts this $10,125.60 note to a financial institution. A draft is drawn on the bank account of the financial institution or the financial institution remits its own check for the amount of $8,000 plus ᵥ portion of the time-price differential charge. For purposes of

---

at the same taxable income for federal income tax purposes, both are acceptable to the IRS.

[4] The term "time value of money" is a term of art in the financial community and refers to the concept that a dollar received today is worth more than a dollar to be received in the future. See 9B Am Jur 2d, Bankruptcy, § 2631, pp 357-359.

this illustration, this portion of the time-price differential charge is $210 (approximately ten percent of the total time-price differential). Consequently, the dealer would then have a draft in the amount of $8,210 of its own, having left the balance of the time-price differential charge as profit for the financial institution. At issue in *Town & Country* was the characterization of this $210 premium in the hands of the car dealerships. The buyer would then directly pay the financial institution thirty-six monthly installments of $281.27 ($10,125.60/36 = monthly payments). There are no more checks given to the dealer and no more funds are being received by the dealer from the financial institution. However, in the event that the time-price differential agreement is paid off on a shorter basis or there is a default by the buyer resulting in a loss to the financial institution, there is a proportionate share of the time-price differential charge charged back to the dealer. For example, if the note is paid within two years, the dealer has a charge back of the one-year time-price differential charge that he has retained, inasmuch as such time-price differential charge has not been earned and in fact has been prepaid. At issue in *Town & Country* was also the characterization of this charge back to the plaintiff dealerships. Their contention was that it was "interest income" and therefore should be deducted from their SBTA tax bases.

The Court found and the parties conceded that the time-price differential charges paid by the customer to the financial institution constituted "interest income." The issue became whether this interest, in the hands of the financial institution, retained this characterization when it was rebated to the plaintiff's

car dealerships. The Court acknowledged that neither the SBTA nor federal tax law specifically defined "interest" and relied on rules of statutory interpretation in attempting to ascertain the intent of the Legislature. *Town & Country, supra* at 239-240. It held that, because the SBTA did not specifically define "interest," the Legislature intended that the word be construed according to its ordinary and primarily understood meaning, and therefore defined "interest" as

[c]ompensation allowed by law or fixed by the respective parties for the use or forbearance of money, "a charge for the loan or forbearance of money," or a sum paid for the use of money, or for the delay in payment of money. [*Id.* at 242, citing *Balch v Detroit Trust Co*, 312 Mich 146, 152; 20 NW2d 138 (1945); *Coon v Schlimme Dairy Co*, 294 Mich 51, 56; 292 NW 560 (1940); *Marion v Detroit*, 284 Mich 476, 484; 280 NW 26 (1938); *Drennan v Herzog*, 56 Mich 467, 469; 23 NW 170 (1885); 47 CJS, Interest & Usury, § 3, pp 18-22.]

In applying this definition to the facts in *Town & Country*, the Court held that any amount returned to the plaintiffs was not money paid for the use of or forbearance from using money and the rebates therefore were not interest income. It reasoned that because the addition of interest expense on their floor-plan financing to business income was mandated by statute, MCL 208.9(4)(f); MSA 7.558(9)(4)(f), a rebate or return to the plaintiffs of a portion of the finance charges that plaintiffs had paid in connection with the floor-plan financing of their inventories was not money paid to the plaintiffs for the use of money or the forbearance or delay in the use of money. *Town & Country, supra* at 244. It further reasoned that, although generally accepted accounting princi-

ples may have required that a return of a portion of that interest be credited on the dealerships' books as "interest refund," a refund of interest is not "interest income" within the meaning of the SBTA. *Id.*

In arriving at its decision, the Court also noted that, in general, exemptions from taxation are not favored and that statutory exemptions are construed strictly against the taxpayer. *Id.* at 242-243. It also acknowledged that "the propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence. Rather, it 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.'" *Id.* at 243 quoting *Comm'r of Internal Revenue v Nat'l Alfalfa Dehydrating & Milling Co*, 417 US 134, 148-149; 94 S Ct 2129; 40 L Ed 2d 717 (1974), and *New Colonial Ice Co v Helvering*, 292 US 435, 440; 54 S Ct 788; 78 L Ed 1348 (1934).

In the present case, the trial court found that plaintiff's "purchase discounts taken" did constitute "interest income" because they represented money paid to plaintiff by its suppliers in exchange for the early forbearance of plaintiff's money. Defendant argues that purchase discounts are not payment for the use or forbearance of money and do not comport with the definition of "interest" as set forth in *Town & Country, supra* at 242. Defendant supports this contention with the position that purchase discounts do not reflect the time value of money, as does interest, because, for example, pursuant to a 2/10, net 30 discount, a purchaser would be due the same discount on day one that would be available on day ten and would be due no discount whatsoever on days eleven

through thirty.[5] Defendant also finds compelling that plaintiff's suppliers were not in the commercial lending industry and merely offered the discounts as an incentive to its customers to pay their invoices in a timely manner.

In accord with defendant's argument, the Supreme Court in *Town & Country, supra* at 243, appeared reluctant to allow an "interest income" deduction from a taxpayer's SBT tax base for what the Court described as a "rebate." The ordinary and common understanding of purchase discounts is that they are partial rebates of a purchaser's invoice amount as an incentive for early payment. See Kieso & Weygandt, *Intermediate Accounting* (5th ed), p 330. Although, as plaintiff argues, there is a time element to this rebate, purchase discounts are not strictly time-price differential transactions that are usually associated with interest such as discount bonds or discounted chattel paper, which both rely strictly upon the time value of money to derive their prices. As noted in *Town & Country, supra* at 242-243, tax exemptions are strictly construed against the taxpayer. Also, this Court may not speculate on the probable intent of the Legislature beyond the intent expressed in the words of the statute and may not engage in judicial construction when the plain and ordinary meaning of the

---

[5] In fact, the federal regulation that plaintiff relies upon, 26 CFR 1.471-3, refers to "a fair interest rate." If we were to accept plaintiff's analysis and call this interest income, we do not believe the interest rate could be deemed fair. For example, if plaintiff were to make payment on the last day that the discount could be taken, it would be forbearing the use of its money for only one day, for which it earns a two percent discount. If we deem this to be interest, then it would equate to an annual interest rate of 730 percent. We do not believe that this could be considered a "fair interest rate." In fact, if it were interest, it would be considered criminal usury. MCL 438.41; MSA 19.15(51).

language is clear. *Adrian School Dist v Michigan Public Schools Employees' Retirement System*, 219 Mich App 456, 461; 556 NW2d 524 (1996).

The definition of "interest" requires that the parties have "fixed" a rate for the use or forbearance of money, usually pursuant to a contract or by law. *Town & Country, supra* at 241, quoting *Old Colony R Co v Comm'r of Internal Revenue Service*, 284 US 552, 560; 52 S Ct 211; 76 L Ed 484 (1932). The contract in this case was a purchase agreement evidenced by an invoice. Plaintiff as the purchaser agreed to the full invoice price but, in the event it submitted payment within ten days, it would receive a rebate of the total invoice price. The parties here did not agree to any specific interest rate, nor was plaintiff contractually bound to forebear its money. Simply stated, plaintiff could take the discount or it could elect not to do so. Therefore, there was no contractual forbearance of money by plaintiff. Finally, as defendant properly argues, the Department of Treasury's interpretation of purchase discounts as a reduction in the purchase price or a rebate is entitled to deference. *Ansell v Dep't of Commerce (On Remand)*, 222 Mich App 347, 354; 564 NW2d 519 (1997).

The Court in *Town & Country* also was unpersuaded by how the taxpayers designated the funds in their corporate records and even disregarded compliance with generally accepted accounting principles (GAAP). *Town & Country, supra* at 244. Plaintiff spends considerable time arguing that under GAAP and under federal tax law "purchase discounts taken" are designated as "interest income." First, as discussed above, under the gross method of accounting for purchase discounts, Revenue Ruling 73-65 states that

these discounts are accounted for as "income" items and not "interest income." Further, this income account is subtracted from the cost of goods sold account before computing gross income. Thus, the final result is that the taxpayer paid less for its inventory. The result would then be a higher federal gross income, and consequently, a higher SBT tax base before adjustments. The same result occurs when utilizing the net method of accounting for purchase discounts, except that these taxpayers do not have a "purchase discounts taken" account on their records, but rather an expense account "purchase discounts lost." Plaintiff does not offer an explanation for why gross method taxpayers should receive this deduction while net method taxpayers should not merely because they have chosen a different accounting method. Thus, the trial court erred in finding that "purchase discounts taken" were "interest income" as defined by *Town & Country, supra,* and therefore excludable from plaintiff's SBT tax base. These discounts appeared to constitute a "rebate" or "reduction in the cost of purchases," rather than "interest income," because federal tax law does not define these discounts as "interest" and plaintiff was not contractually bound to forebear the use of its money.

Simply put, a purchase discount taken is more akin to a reduction in the purchase cost of goods than it is to interest on money invested. We are satisfied that treating it as such not only means that a taxpayer will owe the same tax whether it employs the net or gross method of accounting for purchase discounts, but it is also more consistent with the purpose behind the SBT. That is, the taxpayer is taxed for the amount it adds

to the value of the goods it purchases and thereafter sells.

Reversed. Defendant may tax costs.