STONE v STATE OF MICHIGAN

Docket No. 217485. Submitted August 8, 2000, at Lansing. Decided September 21, 2001, at 9:05 A.M. Leave to appeal sought.

John T. Stone and Phillip M. Stevens, for themselves and other former employees of the state of Michigan who participated in an early retirement program offered by the state in 1996-97, brought a class action in the Court of Claims against the state of Michigan and the Department of Treasury to challenge the validity of, and enjoin the defendants from, withholding state and local income taxes from monthly payments due the early retirees for accumulated sick leave. Under the compensation plan of the Michigan Civil Service Commission, state workers accumulate sick leave during the course of their employment and state workers hired before October 1, 1980, receive payment for unused sick leave upon retirement. Ordinarily such payment is in lump sum and is taxed as income in the year received. However, under the terms of the early retirement program, which were made a part of the State Employees' Retirement Act (SERA), MCL 38.19f, payment to early retirees under the 1996-97 program for accumulated sick leave is to be made in sixty monthly installments. The plaintiffs contended that the challenged withholding contravenes subsection 40(1) of the SERA, MCL 38.40(1), which provides in part that the right of a person to a pension, an annuity, a retirement allowance, any optional benefit, and any other right accrued or accruing under the SERA is exempt from any state, county, municipal, or other local tax. The court, Peter D. Houk, J., granted summary disposition for the plaintiffs, ruling that no genuine issues of material fact existed and the plaintiffs were entitled to judgment as a matter of law, and issued an injunction. The defendants appealed by leave granted. The injunction was stayed pending appeal.

The Court of Appeals held:

1. The right to be paid for accumulated sick leave in monthly installments accrued under subsection 19f(3) of the SERA, thus making the monthly payments exempt from state and local taxes under subsection 40(1) of the SERA. It is the SERA itself, not the commission's compensation plan, that entitles 1996-97 early retirees to be paid for accumulated sick leave in sixty monthly installments.

Because the Legislature knew of the tax-exemption provisions of subsection 40(1) when it made the 1996-97 early retirement program part of the SERA in § 19f, the Legislature clearly intended that the monthly installments under subsection 19f(3) be tax-exempt pursuant to subsection 40(1).

2. No merit lies in the defendants' claim that the Court of Claims exceeded its authority in granting the plaintiffs relief as it concerns local taxing authorities, none of whom was made a party defendant in the plaintiffs' action. Assuming that the defendants have standing to assert a claim on behalf of local taxing authorities concerning the relief ordered by the Court of Claims, the Court of Claims, in enjoining the defendants from withholding income taxes from the installment payments to the plaintiffs, did not direct local taxing authorities either to take action or to refrain from taking action with respect to any claim by the plaintiffs for refund of withheld local income taxes.

3. MCL 205.28(1)(b), which provides that an injunction shall not issue to stay proceedings for the assessment and collection of a tax, did not apply so as to prohibit the Court of Claims from enjoining the defendants from withholding income taxes from monthly payments for accumulated sick leave to the 1996-97 early retirees. The plain language of subsection 28(1)(b) prevents only injunctions meant "to stay proceedings for the assessment and collection of a tax." The plaintiffs' action was not a proceeding for the assessment and collection of a tax.

Affirmed.

COLLINS, J., dissenting, stated that subsection 19f(3) constitutes a condition that retirement system members accept if they accept the state's offer of early retirement under the SERA. The requirement in subsection 19f(3) that payment for accrued sick leave be made in monthly payments, rather than in lump sum as would normally occur under the compensation plan and rules of the Civil Service Commission, did not convert the payments for accumulated sick leave into a tax-exempt retirement benefit under subsection 40(1). The decision of the Court of Claims should be reversed, and the case should be remanded for entry of summary disposition for the defendants.

CIVIL SERVICE — STATE EMPLOYEES' RETIREMENT ACT — 1996-97 EARLY RETIRE-MENT — MONTHLY PAYMENTS FOR ACCUMULATED SICK LEAVE — TAX EXEMPTION.

The right of state employees who participated in an early retirement program offered by the state in 1996-97 to receive payment for accumulated sick leave in sixty consecutive monthly installments accrued under the State Employees' Retirement Act, not under the

Civil Service Commission compensation plan, thus making the payments exempt from state and local taxes pursuant to a provision of the act that states that the right of a person to a pension, an annuity, a retirement allowance, any optional benefit, and any other right accrued or accruing under the act shall be exempt from any state, county, municipal, or local tax (MCL 38.19f[3], 38.40[1]).

*Hubbard, Fox, Thomas, White & Bengtson* (by *Michael E. Woodworth*) and *Phillip M. Stevens*, for the plaintiffs.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Tracy A. Sonneborn*, Assistant Attorney General, for the defendants.

Before: M. J. KELLY, P.J., and WHITBECK and COLLINS, JJ.

WHITBECK, J. Defendants state of Michigan and the Department of Treasury appeal by leave granted an order granting plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10). Defendants challenge the Court of Claims' determination that monthly payments for accumulated sick leave under a special statutory provision[1] of an early retirement program for state employees are exempt from state, county, city, and other local taxes. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

A. EARLY RETIREMENT AND ACCUMULATED SICK LEAVE

In 1996, the Legislature created an early retirement program for state employees who met certain criteria, including age and length of service. This was part of a larger effort to extend to state employees some of the

---

[1] MCL 38.40(1).

benefits private sector employees enjoyed at the time, such as defined contribution employment plans.[2] To streamline the state work force and reduce state payroll costs, the Legislature in 1997 widened the group of state workers who were eligible to participate in the program.[3] The Legislature incorporated the terms of this special early retirement program in the State Employees' Retirement Act (SERA),[4] determining the levels of compensation these retirants[5] would receive.[6]

Plaintiffs are a class of individuals who retired or contemplated retiring under this early retirement program. As they would likely point out, length of service is only one factor that affects the amount of money each retirant receives under this early retirement program. Under the compensation plan of the Michigan Civil Service Commission, all state workers are entitled to accumulate sick leave during the course of their employment.[7] Commission Rule 5-5.4(a) provides that "[c]rediting and utilization of sick leave, as well as payment at retirement, separation, or death shall be in accordance with provisions contained in the official compensation plan," meaning that this accumulated sick leave may be payable at retirement. The compensation plan distinguishes between workers hired before and after October 1, 1980. Workers hired before October 1, 1980, are paid for accumu-

___

[2] See 1996 PA 487.

[3] See 1997 PA 3.

[4] See MCL 38.19f.

[5] A "retirant" is "a person who has ceased to be a member of the retirement system by reason of retirement with a pension or retirement allowance payable from the funds of the retirement system." MCL 38.1h(2).

[6] See MCL 38.19f(5).

[7] See Commission Rule 5-5.4, formerly Rule 5-4.4.

lated sick leave when they retire. Employees hired after October 1, 1980, are not eligible to be paid for unused sick leave at all.

Ordinarily, payment for accumulated sick leave to retirants hired by the state before October 1, 1980, occurs in a single lump sum. According to defendants, the state taxed each retirant's lump-sum payment as income in the year the retirant received it. However, the SERA provides in MCL 38.19f(3) that "[a]ny amount that a member retiring under this section would otherwise be entitled to receive in a lump sum at retirement on account of accumulated sick leave shall be paid in 60 consecutive equal monthly installments." When the state began making monthly accumulated sick leave payments to retirants under the 1996-97 early retirement program, the state taxed these payments as if they were the traditional lump-sum payments for accumulated sick leave, apparently withholding both state and local taxes from the payments.

### B. PLAINTIFFS' SUIT

In March 1998, plaintiffs sued in the Court of Claims, alleging that defendants could not tax these monthly accumulated sick leave payments. Plaintiffs claimed in their first amended complaint that withholding income taxes from the monthly accumulated sick leave payments was a breach of contract and deprived them of property without due process of law.[8] Further, they contended, the right to monthly accumulated sick leave payments under MCL

---

[8] See Const 1963, art 1, § 17.

38.19f(3) had to be viewed in light of MCL 38.40(1), a related subsection of the SERA that states:

> The right of a person to a pension, an annuity, a retirement allowance, any optional benefit, *any other right accrued or accruing to any person under the provisions of this act,* the various funds created by this act, and all money and investments and income of the funds, are *exempt from any state, county, municipal, or other local tax,* and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law, and shall be unassignable except as otherwise provided in this act.[9]

Thus, plaintiffs argued that defendants had violated the SERA by withholding money owed to the state for the accumulated sick leave payments and by withholding taxes for other taxing authorities.

Plaintiffs moved for summary disposition under MCR 2.116(C)(9) and (10). Defendants responded by requesting summary disposition in their favor pursuant to MCR 2.116(I)(2). The parties essentially disputed whether the right to be paid for accumulated sick leave "accrued" under the SERA, which would then determine whether the monthly accumulated sick leave payments were tax-exempt. Defendants argued that the right to be paid for accumulated sick leave "accrued" under the compensation plan and, therefore, that the monthly accumulated sick leave payments could be taxed in the same way as the lump-sum accumulated sick leave payments. In support of their argument for tax exemption, plaintiffs pointed out that the SERA, MCL 38.19f(3), specifically prescribes the manner in which they are paid for

---

[9] Emphasis added.

accumulated sick leave and, therefore, the monthly accumulated sick leave payments "accrued" under the SERA.

The Court of Claims rejected defendants' argument that the case could not proceed because plaintiffs had failed to join as necessary parties the local taxing authorities for whom the state was withholding taxes. However, the Court of Claims denied plaintiffs' motion for summary disposition under MCR 2.116(C)(9). Instead, the Court of Claims granted defendants summary disposition of plaintiffs' claim that withholding taxes on monthly accumulated sick leave payments was a constitutional tort, violating the right to due process of law. The Court of Claims granted plaintiffs' motion for summary disposition regarding the claim for breach of contract under MCR 2.116(C)(10). The Court of Claims reasoned the monthly accumulated sick leave payments constituted a right that "accrued" under the SERA as well as an "optional benefit." Accordingly, the monthly accumulated sick leave payments were tax-exempt under MCL 38.40(1). The Court of Claims also determined that Const 1963, art 9, § 24 protected the vested right these retirants had in being paid for their accumulated sick leave from being diminished as a matter of contract law. The Court of Claims concluded that, by taxing these monthly accumulated sick leave payments when the retirants did not earn interest on the unpaid accumulated sick leave over the five-year payout period, defendants breached this contract and violated the constitution.[10] Consequently, the Court of Claims issued an injunction preventing defendants

_____

[10] Const 1963, art 9, § 24.

from "withholding income taxes from Plaintiffs' sick leave installment payments," but later stayed the effect of this injunction pending appeal.

### C. DEFENDANTS' APPEAL

On appeal, defendants advance the same legal arguments concerning whether the monthly accumulated sick leave payments are taxable. Defendants also contend that the Court of Claims erred in concluding that plaintiffs did not have to join as defendants all entities that received the taxes from the monthly accumulated sick leave payments. Further, defendants assert that the Court of Claims lacked the authority to issue an injunction against defendants.

### II. THE SERA

#### A. STANDARD OF REVIEW

To address this portion of the appeal, we must interpret and apply the relevant statutes, a task this Court undertakes by conducting review de novo.[11]

#### B. SUMMARY DISPOSITION AND STATUTORY INTERPRETATION

A motion for summary disposition under MCR 2.116(C)(10) tests the factual underpinnings of a claim other than an amount of damages, and the deciding court considers all the evidence, affidavits, pleadings, admissions, and other information available in the record.[12] The deciding court must look at

---

[11] *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).

[12] MCR 2.116(G)(5); *Smith v Globe Life Ins Co,* 460 Mich 446, 454; 597 NW2d 28 (1999).

all the evidence in the light most favorable to the nonmoving party, who must be given the benefit of every reasonable doubt.[13] Only if there is no factual dispute, making the moving party entitled to judgment as a matter of law, would summary disposition be appropriate.[14] The process of applying a statute intersects with this legal standard for summary disposition at the point where the court deciding a motion for summary disposition considers whether the moving party is entitled to judgment as a matter of law. In other words, the court must understand what the law is in order to determine which party is entitled to judgment when there is a settled factual record.[15]

Our primary goal when interpreting statutes is to determine and give effect to the Legislature's intent.[16] The best way to determine this legislative intent is to examine the language of the statute at issue[17] because we presume that the Legislature intended to give the statute the meaning it "plainly expressed."[18] If the meaning of the statute is clear, then courts have no further role in interpreting it; the statute must be applied as written.[19] However, if the statute's meaning is not clear, courts "must look to the object of the

---

[13] *Atlas Valley Golf & Country Club, Inc v Village of Goodrich*, 227 Mich App 14, 25; 575 NW2d 56 (1997).

[14] See *Auto Club Ins Ass'n v Sarate*, 236 Mich App 432, 437; 600 NW2d 695 (1999).

[15] See, generally, *Kent v Alpine Valley Ski Area, Inc*, 240 Mich App 731, 737-744; 613 NW2d 383 (2000) (interpreting statute in order to determine whether trial court erred in granting summary disposition).

[16] See *State Farm Fire & Casualty Co v Old Republic Ins Co (On Remand)*, 242 Mich App 105, 108; 617 NW2d 715 (2000).

[17] See *Gier v Auto-Owners Ins Co*, 244 Mich App 336, 339; 625 NW2d 398 (2001).

[18] *Platte Lake Improvement Ass'n v Dep't of Natural Resources*, 218 Mich App 424, 427; 554 NW2d 342 (1996).

[19] See *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996).

statute in light of the harm it is designed to remedy, and strive to apply a reasonable construction that will best accomplish the Legislature's purpose," without "abandon[ing] the canons of common sense."[20] In doing this, courts must give effect to every phrase, clause, and word in a statute in order to avoid rendering any part of a statute meaningless.[21] Unless specifically defined in the statute, every word or phrase in a statute should be given its obvious and ordinary meaning, considering the context and any technical terms, which must be given their particular connotation.[22]

There are also special rules of statutory construction that apply to pension laws[23] and laws granting tax exemptions.[24] The parties engage in a lengthy skirmish in their briefs concerning which rule of construction should take precedence. However, we need not employ those rules in this case, nor resolve any potential conflict between them. As we explain in greater detail below, we conclude that the Legislature's intent is clear from the statutes at issue.

C. "RIGHTS" AND "ACCRUALS"

(1) "RIGHTS" IN MCL 38.40(1)

The parties agree that plaintiffs are not entitled to the tax exemption in MCL 38.40(1) under the lan-

---

[20] See *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994) (citations omitted).

[21] See *Heinz, supra* at 295.

[22] See MCL 8.3a; *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997).

[23] See *Bannon v Saginaw*, 420 Mich 376, 385; 362 NW2d 668 (1984).

[24] See *Elias Bros Restaurants, Inc v Dep't of Treasury*, 452 Mich 144, 150; 549 NW2d 837 (1996); *Holland Home v Grand Rapids*, 219 Mich App 384, 396; 557 NW2d 118 (1996).

guage referring to a "pension," an "annuity," or a "retirement allowance." Rather, their dispute mainly concerns whether plaintiffs are entitled to this tax exemption because their "right" to be paid for accumulated sick leave "accrued" or is "accruing" under the SERA.[25] The SERA does not specifically define what constitutes a "right," nor how a right "accrues" under its provisions. We do not need to consult a dictionary to determine that the word "right," used in this context as a noun, has the plain meaning of a legal entitlement. Thus, when discussing "rights," MCL 38.40(1) refers to a person's legal entitlement to receive a "pension," an "annuity," a "retirement allowance," an "optional benefit," or any other right accrued or accruing under the SERA.

If "legal entitlement" is a broad interpretation of the word "right," we conclude that it is purposefully so. By listing the most common varieties of retirement benefits and then adding "*any other* right accrued or accruing to *any* person under the provisions of this act," the Legislature made this category of tax-exempt rights a wide one.[26] As long as the property that would otherwise be taxed is enumerated in MCL 38.40(1) or "accrued" or is "accruing" under the SERA, it is free from the specified taxes.

### (2) "ACCRUALS" IN MCL 38.40(1)

What, then, does it mean for a right—a legal entitlement—to "accrue" under the SERA? According to the

---

[25] We do not address whether the Court of Claims erred in determining that MCL 38.19f(3) creates an "optional benefit" because we conclude that the accumulated sick leave payments under that statute fall within the language of MCL 38.40(1) granting "any other right" that accrued under the SERA tax-exempt status.

[26] MCL 38.40(1) (emphasis added).

dictionary, to accrue means in relevant part "to happen or result as a natural growth, [or] addition" and "to become a present and enforceable right."[27] This second definition is somewhat circular in its reasoning, suggesting that a right accrues once it becomes a right.[28] However, when read logically with the "natural addition or growth" language, the dictionary definition implies that a right accrues under the SERA if the SERA is a statutory basis for the right.

Defendants, in their strongest argument, point to the language in MCL 38.19f(3) to contend that the legal entitlement to be paid for accumulated sick leave does not "accrue" under the SERA. Specifically, they argue that accumulated sick leave is an "amount" that plaintiffs "would otherwise be entitled to receive in a lump sum at retirement," emphasizing that the word "otherwise" indicates that the right to be paid comes from some source outside the SERA. Certainly, they argue, it is plain that neither MCL 38.19f(3) nor any related provisions "created" this right under the SERA because it already existed under an entirely separate program, the Commission's compensation plan. Nor is the right to be paid for accumulated sick leave a "new" right under the SERA, defendants note, because the retirants accumulated the unpaid sick leave over the course of their employment with the state pursuant to the compensation plan. While each of these assertions may be true as a matter of fact, nothing in MCL 38.40(1) requires that

---

[27] *Random House Webster's College Dictionary* (2d ed), p 9.

[28] The issue is whether the right accrued under the SERA, not specifically at what time the right accrued. Thus, unlike an issue implicating a statute of limitations, it is unnecessary to focus on the timing of the SERA amendments in 1996 and 1997 and their relationship to the dates when plaintiffs retired.

the SERA "create" a right to payment or that this right to payment be "new" in order for it to be tax-exempt. That different aspects of the right to be paid for accumulated sick leave might be traced to more than one legal source is not determinative. Nowhere in MCL 38.40(1) did the Legislature indicate that that the SERA must be the exclusive source of a right for that right to be tax-exempt. Instead, MCL 38.40(1) suggests that when the Legislature gives legal force and effect to an entitlement by incorporating it in the SERA, the entitlement is part of the SERA and, therefore, "accrued" or is "accruing" under its provisions.

By relying on a technical definition of "accrued compensation" from the accounting context, defendants fail to posit a meaningful definition of the words "accrued" or "accruing" under the SERA. In other words, defendants confuse how state employees accumulate unused sick leave with the right to be paid for that leave when the employees retire from state service under this specific early retirement program. We do not doubt that plaintiffs each *accumulated* sick leave over the course of their employment pursuant to the Commission's compensation plan, not just when the Legislature decided to amend the SERA to offer this early retirement program. However, we are equally sure that the *right* to be paid for this accumulated sick leave in monthly installments *accrued* under MCL 38.19f(3).

### (3) THE FORM OF PAYMENT AND THE RIGHT TO PAYMENT

Defendants have spent significant time arguing that, by accepting the terms of the early retirement program incorporated in the SERA, each retirant waived the right to receive accumulated sick leave payments

in any form other than the sixty monthly installments. Defendants make this argument in an attempt to refute the Court of Claims' reasoning that plaintiffs could not waive their contractual rights resulting from work for the state. However, defendants' argument illustrates how inextricably intertwined this form of monthly accumulated sick leave payment is with the substantive right to be paid for accumulated sick leave at retirement. The Legislature did not distinguish between the substantive right to be paid "any amount" that accrued under the SERA and the process of payment under the SERA. The right to a form of payment for accumulated sick leave, in this instance sixty consecutive monthly payments, comes from MCL 38.19f(3). This satisfies the broad language in MCL 38.40(1) that extends tax exemption to "*any other right* accrued or accruing to any person under the provisions of"[29] the SERA.

Whether this monthly payment plan under MCL 38.19f(3) is financially more or less favorable to retirants is not germane when construing the tax-exemption language in MCL 38.40(1). Rather, we emphasize, the Legislature placed these monthly accumulated sick leave payments squarely within MCL 38.19f(3). MCL 38.19f(3) is unambiguously part of the SERA. It, therefore, is the SERA itself, not simply the Commission's compensation plan, that entitles retirants under the 1996 and 1997 amendments to be paid for accumulated sick leave in sixty consecutive monthly installments. Indeed, MCL 38.19f(3) also explicitly ties the substantive right to monthly accumulated sick leave payments to the SERA by acknowl-

---

[29] Emphasis added.

edging that the retirants who receive these sixty installment payments are actually "retiring" under the SERA.

The Legislature, which is familiar with the rules of statutory construction[30] and existing laws,[31] knew that the tax exemption in MCL 38.40(1) existed when it amended the SERA in 1996 and 1997. Had the Legislature intended to make monthly accumulated sick leave payments taxable, it could have done one of three things. First, the Legislature could have enacted legislation that was distinct from the SERA to govern the early retirement program, thereby taking the accumulated sick leave payments and any other aspect of the early retirement program outside the SERA and the tax-exemption provisions of MCL 38.40(1). Second, the Legislature could have inserted a clause within the SERA excluding the monthly accumulated sick leave payments from the tax-exemption provisions of MCL 38.40(1). The Legislature, in enacting other subsections of MCL 38.19f, used this very technique.[32] Third, the Legislature could have amended MCL 38.40(1) itself to exclude the monthly accumulated sick leave payments explicitly from the tax exemption. The Legislature's failure to take any one of these actions is evidence of its intent to make the tax-exemption provisions of MCL 38.40(1) apply to the monthly accumulated sick leave payments under MCL 38.19f(3).

---

[30] See *Alma Piston Co v Dep't of Treasury*, 236 Mich App 365, 370; 600 NW2d 144 (1999).

[31] See *Walen v Dep't of Corrections*, 443 Mich 240, 248, 505 NW2d 519 (1993) ("It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.").

[32] See, e.g., MCL 38.19f(1), (5).

(4) "RIGHTS" AND "ACCRUALS" REDUX

The statutory entitlement to monthly accumulated sick leave payments is a "right" that "accrues" under the SERA. It is the SERA itself, not the Commission's compensation plan, that entitles retirants under the 1996 and 1997 amendments to be paid in sixty consecutive monthly installments. Because the Legislature knew of the tax-exemption provisions of MCL 38.40(1) when it enacted the 1996 and 1997 amendments of the SERA, its intent was clear: the Legislature intended that the sixty consecutive monthly payments under MCL 38.19f(3) be tax-exempt pursuant to MCL 38.40(1).

D. EJUSDEM GENERIS

Defendants contend that the Legislature intended that *only* "genuine" pension and retirement benefits be tax-exempt. Defendants point out that, in MCL 38.40(1), the Legislature referred to "a pension, an annuity, a retirement allowance, any optional benefit" before using the "any other right" wording. Defendants, without citing any authority, claim that only pension and retirement benefits that are "created" under the SERA, and that are also payable from funds designated in the SERA, constitute these tax-exempt benefits. Because the SERA did not "create" the right to accumulated sick leave, and because the monthly accumulated sick leave payments are not paid from funds designated within the SERA, defendants argue, accumulated sick leave payments are outside the class of these tax-exempt benefits and therefore taxable.

In making this argument, defendants rely on the ejusdem generis doctrine. This doctrine holds that if

"general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned."[33]

Nevertheless, courts are not customarily at liberty to depart from the plain language of a statute when the Legislature chooses to list various actions, conditions, persons, places, or other things in a statute. The ejusdem generis doctrine does not control the interpretation and application of a statute if the Legislature has clearly expressed its intent even if that intent expands the category at issue significantly beyond the implication of the other words used.[34]

We emphasize that we simply cannot envision language broader than "any other right" in the context of MCL 38.40(1). As the dictionary suggests, the word "any" suggests the absence of limits altogether.[35] This broad language is purposeful. The remainder of the sentence requires that the right "accrue" under the SERA. This imposes a logical limitation on the kind of right that is tax-exempt. "Other rights" that are tax-exempt earn this status because those rights are, in some way, related to retirement by state employees

---

[33] *Koester v City of Novi*, 458 Mich 1, 21, n 1; 580 NW2d 835 (1998), quoting Black's Law Dictionary (6th ed), p 517.

[34] *Benedict v Dep't of Treasury*, 236 Mich App 559, 565-566; 601 NW2d 151 (1999).

[35] See *Random House Webster's College Dictionary* (2d ed), pp 60-61 ("any" means "one or more without specification or identification," "whatever or whichever it may be," "every," "all").

by virtue of their inclusion in the SERA. Despite defendants' unstated fear to the contrary, this interpretation does not permit rights unrelated to retirement under the SERA to become tax-exempt. The tax exemption for accumulated sick leave is relevant only when state employees who were hired before October 1, 1980, retire under the SERA.

The Court of Claims observed that the Legislature might have intended for this tax emption to make up for the loss of investment income, that is, interest, that these retirants might earn on their subsequent investments if the state paid the accumulated sick leave in a lump sum rather than in sixty consecutive monthly installments. In truth, however, we do not need to decide *why* the Legislature used such all-encompassing language. The underlying purpose of this legislation does not alter the unambiguous language in MCL 38.40(1). When the language is clear, we need not apply the ejusdem generis doctrine.[36] Further, if we were to apply the doctrine in this case, we would exceed our authority by grafting onto MCL 38.40(1) a condition for tax exemption that the Legislature chose not to impose.

### E. ABSURD RESULT

Defendants also argue that this Court should not interpret MCL 38.40(1) in a way that makes the monthly accumulated sick leave installment payments under MCL 38.19f(3) tax-exempt because it would hand plaintiffs a windfall that the Legislature did not intend. Evidently, they contend that this interpreta-

---

[36] *Benedict, supra.*

tion could entitle retirants to a lump-sum payment under the Commission's compensation plan *and* monthly payments under MCL 38.19f(3). This would be so because the Legislature does not have the authority to override the Commission's constitutional rulemaking authority under Const 1963, art 11, § 5. Thus, defendants argue, this Court should not affirm what amounts to an absurd result.

In the abstract, we would be inclined to agree that this is the sort of absurd result our fiscally conscious Legislature does not ordinarily intend.[37] There are, however, any number of problems with this conclusion. First, defendants do not claim that this double payout will actually occur. Second, in this suit, plaintiffs have not asked for relief that includes a double payout for accumulated sick leave; plaintiffs contend that MCL 38.19f(3) alters only the timing of these accumulated sick leave payments, not their amount. Third, defendants concede that installment payments do not violate any Commission rules, leaving no conflict between the respective constitutional authorities of the Commission and the Legislature.[38] Rather, this is simply an area where the Legislature and the Commission have exercised their respective authorities in a way that overlap to a certain extent,[39] but do not infringe the other's exclusive domain.

---

[37] Note, however, that the "absurd result" doctrine is subject to significant and persuasive criticism. See *People v McIntire*, 461 Mich 147, 156, n 2; 599 NW2d 102 (1999).

[38] See, generally, *Civil Service Comm v Auditor General*, 302 Mich 673, 686-688; 5 NW2d 536 (1942) (holding that Legislature could not impose unconstitutional conditions in appropriations bill for Michigan Civil Service).

[39] See OAG, 1971-1972, No 4732, pp 72-73 (December 29, 1971).

Further, if MCL 38.19f(3) were an unconstitutional attempt by the Legislature to invade the Commission's -authority, the unconstitutional nature of MCL 38.19f(3) would persist regardless of the tax ramifications for the monthly accumulated sick leave payments. However, defendants do not contest that qualified retirants are entitled to receive monthly accumulated sick leave payments under MCL 38.19f(3) if the payments are taxed. Defendants cannot argue that the Legislature invaded the Commission's province by making the monthly accumulated sick leave payments tax-exempt without also challenging the Legislature's basic right to deal with accumulated sick leave payments under MCL 38.19f(3) in the first place.

Our focus on the taxation ramifications for monthly accumulated sick leave payments is, we observe, sensible in light of the Court of Claims' conclusion that denying tax-exempt status for the monthly accumulated sick leave payments was unconstitutional because it diminished the value of accumulated sick leave.[40] However, we need not resolve whether withholding taxes from the monthly accumulated sick leave payments would be unconstitutional under Const 1963, art 9, § 24. We have already concluded that the Legislature intended for these payments to be tax-exempt by enacting MCL 38.19f(3) with the knowledge that MCL 38.40(1) was in place. We see no absurd result in the Legislature's choice to make these payments tax-exempt.

---

[40] See Const 1963, art 9, § 24 ("The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.").

F. CONCLUSION

The Legislature made accumulated sick leave payments under MCL 38.19f(3) tax-exempt in the "any other right" language in MCL 38.40(1). Because plaintiffs were entitled to judgment as a matter of law, the Court of Claims did not err in granting their motion for summary disposition on this contract claim.

### III. NECESSARY JOINDER

#### A. ISSUE PRESENTED

Defendants argue that the Court of Claims could not compel them *or* the local taxing authorities to refund the taxes they withheld from the accumulated sick leave payments without first joining these local taxing authorities as necessary parties. Further, defendants contend that the Court of Claims lacked jurisdiction to compel the local taxing authorities to refund the accumulated sick leave taxes because plaintiffs failed to comply with the refund procedure in the City Income Tax Act.[41] However, the question presented in this appeal asks us only to determine "[w]hether the court of claims erred in granting relief *against local taxing authorities*, where plaintiffs failed to join the local taxing authorities as necessary parties."[42] Defendants have failed to present for appeal a question asking whether nonjoinder of the local taxing authorities deprived the Court of Claims of authority to order *defendants* to refund the state taxes withheld or to prevent *defendants* from with-

---

[41] MCL 141.501 *et seq.*
[42] Emphasis added.

holding taxes in the future.[43] Thus, we limit our review to the question presented concerning any relief granted *against local taxing authorities.*

### B. LOCAL TAXING AUTHORITIES

As a preliminary matter, we question whether defendants, on behalf of the local taxing authorities, have standing to challenge the relief the Court of Claims ordered. Defendants contend that the failure to join the local taxing authorities denied those authorities an opportunity to participate in a hearing and to defend against the plaintiffs' claims to accumulated sick leave taxes already in their respective city treasuries. The local taxing authorities do have a legitimate and significant interest in being able to challenge any relief that they may have to afford plaintiffs given the outcome of the legal controversy surrounding the interpretation of MCL 38.40(1).[44] However, defendants have not explained how failing to join the local taxing authorities could possibly affect *defendants'* rights and interests in this litigation, even though this sort of stake in the outcome of the issue is a traditional benchmark of standing.[45] Further, defendants freely admit that they are not

---

[43] See MCR 7.212(C)(5); see also *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999).

[44] Because the core issue in this case is a matter of statutory interpretation subject to review de novo, we are not certain that the local taxing authorities will have legal grounds on which to object to refunding the taxes to plaintiffs. In any event, plaintiffs in their brief on appeal assert that they are willing to take the risk that failing to join the local taxing authorities will affect their ability to collect refunds from the local taxing authorities.

[45] See *South Macomb Disposal Authority v Nat'l Surety Corp*, 239 Mich App 344, 357; 608 NW2d 814 (2000).

experts in local tax collection and "could not adequately represent the interest of the cities affected . . . ." Consequently, we are uncertain why, in this appeal, defendants take any position concerning the potential that the local taxing authorities will have to refund taxes already collected from the monthly accumulated sick leave payments.

Even if defendants do have standing to challenge the Court of Claims' order as it concerns the local taxing authorities, it is critical to understand that neither of the two orders the Court of Claims entered directly affect the local taxing authorities in any respect. The first order, entered in the record on November 20, 1998, granted summary disposition in part to defendants and in part to plaintiffs. This order has extremely limited language granting relief to plaintiffs. The order says only that "Defendants are hereby enjoined from withholding income taxes from Plaintiffs' sick leave installment payments." This order does not require the local taxing authorities to refund the accumulated sick leave taxes. Rather, this order grants prospective equitable relief that is completely within defendants' control. The second order, entered in the record on January 20, 1999, concerned only the parties' postjudgment motions. This order did not grant any additional relief to plaintiffs concerning refunds, whether from the state or from local taxing authorities.

Simply put, neither order requires any particular action or inaction by the local taxing authorities. Nor does either order affect the local taxing authorities' rights to demand that the successful plaintiffs follow appropriate statutory procedures for securing the re-

fund.[46] Thus, defendants' argument that the Court of Claims exceeded its authority in granting plaintiffs relief as it concerns the local taxing authorities is without merit.

### IV. THE INJUNCTION

#### A. STANDARD OF REVIEW

Defendants contend that the Court of Claims erred as a matter of law in enjoining defendants from withholding taxes because MCL 205.28(1)(b) expressly prohibits injunctions staying proceedings for the assessment and collection of a tax. Having erred in issuing the injunction in the first place, defendants also argue, the Court of Claims again erred in refusing to dissolve the injunction. To resolve this issue requires us to engage in statutory interpretation, which we conduct de novo.[47]

#### B. MCL 205.28(1)

MCL 205.28(1) provides in relevant part:

---

[46] At first, we were somewhat surprised at the limited relief the Court of Claims ordered for plaintiffs. The Court of Claims' decision not to order any refunds counterbalances any administrative efficiency plaintiffs achieved through class certification. Though the Court of Claims efficiently resolved each class member's statutory entitlement to a refund of the accumulated sick leave taxes withheld, each class member now will have to apply to the state and relevant local taxing authorities to receive a refund. However, plaintiffs' failure to cross appeal the relief afforded to them through summary disposition suggests that this is a result they are prepared to tolerate.

[47] See *Omelenchuk v City of Warren*, 461 Mich 567, 571, n 10; 609 NW2d 177 (2000).

The following conditions apply to all taxes administered under this act unless otherwise provided for in the specific tax statute:

*    *    *

(b) An injunction shall not issue to stay proceedings for the assessment and collection of a tax.

We cannot agree with defendants' basic proposition that this statute applies to the equitable remedy the Court of Claims granted plaintiffs. The Court of Claims enjoined defendants from withholding taxes for accumulated sick leave payments. The plain language in MCL 205.28(1) prevents only injunctions meant "to stay proceedings for the assessment and collection of a tax." Self-evidently, this was not a proceeding for the "assessment and collection" of a tax. Rather, it was a lawsuit alleging that defendants had *already* assessed and collected taxes and would do so again in the future, albeit unlawfully in both instances. Once the Court of Claims determined that defendants had no legal right to collect these taxes, equitable relief was appropriate to prevent further harm to plaintiffs. Though defendants cite a federal law prohibiting injunctions in certain tax proceedings, this is a state taxation matter that must be resolved on state law grounds.

Affirmed.

M. J. KELLY, P.J., concurred.

COLLINS, J. (*dissenting*). I respectfully dissent. As I read the plain language of MCL 38.19f(3), that subsection constitutes a condition that retirement system members accept if they accept the state's offer of early retirement under the SERA. I do not agree that

the requirement in MCL 38.19f(3) that payment for accrued sick leave be made in monthly installments, rather than in a lump sum as would normally occur under the Michigan Civil Service Commission (MCSC) compensation plan and MCSC rules, converted the payments for accumulated sick leave into a tax-exempt retirement benefit under MCL 38.40(1).

While I acknowledge that the word "any" is broad, the phrase "any other right" in MCL 38.40(1) is limited by the phrase "accrued or accruing to any person under the provisions of this act." In the plain language of MCL 38.19f(3), "any amount that a member retiring under this section *would otherwise be entitled to receive* in a lump sum at retirement on account of accumulated sick leave shall be paid in sixty consecutive monthly installments" (emphasis added), the Legislature specifically recognized that the right to receive payment for accumulated sick leave "accrued" under something other than the SERA. It is undisputed that the amount that a retirant "would otherwise be entitled to receive in a lump sum at retirement on account of accumulated sick leave" referenced in MCL 38.19f(3) is provided for in the MCSC compensation plan and MCSC rules. While it is true, as the majority states, that "[n]owhere in MCL 38.40(1) did the Legislature indicate that the SERA must be the exclusive source of a right for that right to be tax-exempt," *ante* at 519, the fact remains that if plaintiffs had not accumulated any sick leave under the MCSC compensation plan, they would not be entitled to any monthly installment payments under MCL 38.19f(3). The only right that accrued under MCL 38.19f(3) is the right to receive in monthly installments income to which the retirants were already entitled. Defendants are col-

lecting tax on that income, not plaintiffs' "right" to receive it in monthly installments. MCL 38.19f(3) did not alter or augment the source of plaintiffs' right to receive payment for sick leave, but only altered the manner of payment. In my view, payment for accumulated sick leave, whatever the form, is not a right accruing under the SERA.

Although I find the language of MCL 38.19f(3) and MCL 38.40(1) to be plain, in light of my disagreement with the majority's interpretation of the statutory language, it may be appropriate to turn to rules of statutory construction to resolve the apparent ambiguity in meaning. See *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). MCL 38.40(1) is clearly a tax-exemption provision within the SERA. Tax exemptions are the antithesis of tax equality. *Advo-Systems, Inc v Dep't of Treasury*, 186 Mich App 419, 423; 465 NW2d 349 (1990). Therefore, exemptions from taxation generally are not favored and are construed strictly against the taxpayer. *Perry Drug Stores, Inc v Dep't of Treasury*, 229 Mich App 453, 461; 582 NW2d 533 (1998); *Advo Systems, supra*. Accordingly, an exemption from tax must be expressed in unambiguous terms:

> Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of estab-

lishing it is upon him who claims it. [*Howard v Clinton
Charter Twp*, 230 Mich App 692, 696; 584 NW2d 644 (1998),
citing *Detroit v Detroit Commercial College*, 322 Mich 142,
148-149; 33 NW2d 737 (1948).]

The Legislature is presumed to be familiar with rules
of statutory construction. *Alma Piston Co v Dep't of
Treasury*, 236 Mich App 365, 370; 600 NW2d 144
(1999). Accordingly, I conclude that had the Legisla-
ture intended that those retiring under the SERA be
exempt from paying tax on income that had always
been taxable, while those retiring under normal cir-
cumstances and those otherwise separating from
state employment[1] pay taxes on the income, it would
have done so in an unambiguous manner. In my read-
ing of the statute, the language of the SERA does not
clearly and unambiguously exempt the monthly
installment payments for accumulated sick leave from
taxation. Accordingly, I conclude that those payments
are taxable.

The majority contends that if the Legislature
intended that the monthly installment payments for
sick leave be taxable, it would have explicitly
excluded those monthly payments from the tax-
exemption provision of MCL 38.40(1) or enacted leg-
islation distinct from the SERA to govern the early
retirement program. Because I do not agree that
plaintiffs' right to payment for accumulated sick
leave, whatever the form, constitutes a right that

---

[1] Retirees who were hired before October 1, 1980, are not the only state
employees entitled to payment for accumulated sick leave. Under Section
IV of the MCSC compensation plan, those employees hired before October
1, 1980 who separate by reason of death or who simply leave state
employment also are entitled to payment for accumulated sick leave
under the terms of the compensation plan.

accrued under the SERA, however, I see no need for the Legislature to have explicitly excluded the monthly installment payments of that accumulated leave from MCL 38.40(1) or to have enacted legislation separate from the SERA to take those payments outside the provisions of MCL 38.40(1).

I conclude that MCL 38.19f(3) does not constitute a retirement benefit falling within the tax exemption provided for in MCL 38.40(1). Rather, it is a condition retirants accept if they accept the state's offer of early retirement. Accordingly, I would find that the monthly installment payments made on account of accumulated sick leave are taxable income. Further, because I conclude that MCL 38.19f(3) does not constitute a financial benefit accruing under the SERA, I would find that defendants' taxation of the monthly installment payments for accumulated sick leave does not constitute a diminishment of a contractual benefit in violation of Const 1963, art 9, § 24.

In light of my conclusions regarding the issues discussed above, I do not address defendants' remaining issues on appeal.

I would reverse and remand for entry of summary disposition in favor of defendants.